Filed 2/17/15  (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>STEVEN M. BRASLAW,<br><br>　　　Defendant and Appellant. | A138325<br><br>(Napa County<br>Super. Ct. No. CR160180)<br><br>ORDER MODIFYING OPINION<br>DENYING APPLICATION TO REDACT<br>[NO CHANGE IN JUDGMENT] |

THE COURT[1]:

The opinion filed January 30, 2015, is hereby modified as follows:

1. On page 10, the citation following the first sentence of the second paragraph is modified to delete the reference to *People v. Doolin*, and should read as follows:

    (*People v. Clark* (2011) 52 Cal.4th 856, 948 [131 Cal.Rptr.3d 225, 261 P.3d 243].)

2. On page 12, the citation to *Clark* in the third paragraph after the second sentence should be modified to read as follows, and all other citations in that string cite should remain the same:

    *People v. Clark* (1993) 5 Cal.4th 950, 1021 [22 Cal.Rptr.2d 689, 857 P.2d 1099], disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]

---

[1]  Before Humes, P. J., Margulies, J., and Banke, J.

1

Defendant's application to redact is hereby denied.

There is no change in judgment.

Dated: _____                    _____
                                                 Humes, P. J.

Filed 1/30/15 (unmodified version)
**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>STEVEN M. BRASLAW,<br><br>    Defendant and Appellant. | A138325<br><br>(Napa County<br>Super. Ct. No. CR160180) |

Defendant Steven M. Braslaw, following a jury trial, was found guilty of raping an intoxicated person (Pen. Code, § 261, subd. (a)(3)).[2]  On appeal, he contends the trial court should have given further jury instructions on a defendant's belief in the victim's capacity to consent and should have instructed on attempted rape.  He also claims his counsel was ineffective in failing to object to alleged prosecutorial misconduct.  In the published portion of this decision, we conclude there was no instructional error.  In the unpublished portion, we reject the claim of ineffective assistance.  We therefore affirm the judgment.

## I.  BACKGROUND

Defendant and Jane Doe[3] were classmates at a vocational school in St. Helena.  Doe lived at a school dormitory.  Defendant lived off-campus in a house notorious for wild parties.

---

[*]  Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II(C).

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

[3]  As the parties did at trial, we will refer to the victim as Jane Doe.

1

In January 2012, Doe and her former roommate, M.H., attended a party at defendant's house. Doe became "really drunk." One moment she was hanging out with friends; the next thing she recalled was being unclothed in a shower.

M.H. testified Doe, while playing a drinking game, had "hit a wall," sat down and stopped talking, and M.H.'s boyfriend took Doe upstairs so she could sleep. Doe then vomited, and M.H., the boyfriend, and defendant assisted with cleanup. M.H. and her boyfriend got Doe undressed and into the shower. Doe, according to M.H. was "completely gone"—just dead weight, not really aware of anything. Defendant was also drunk, but his level of intoxication was not comparable to Doe's, as defendant was coherent and functional.

While in the shower, Doe recalled seeing M.H. and the boyfriend leave the bathroom, and seeing that defendant had entered. Defendant, also unclothed, came into the shower and asked if it was "gonna be awkward." Doe recalled saying "no" and being confused about what defendant intended to do, but thought he might help her bathe. She remembered nothing else in detail about what happened in the shower. Afterwards, M.H. dressed Doe in a sweater, nothing more, and placed her in a spare trundle bed in the boyfriend's bedroom. Doe had no recollection of being dressed in the sweater and placed in the bed.

M.H. and her boyfriend then retired to his bed. Although the lights in the bedroom were out, M.H. saw defendant enter the bedroom and "collapse" or "flop" (not crawl) onto Doe's bed. M.H. asked her boyfriend to get a condom. Overhearing, defendant asked, in what M.H. perceived as a joking tone, if he could have one too. The boyfriend got out of bed, asked if Doe and defendant were okay, and returned to bed with a condom. M.H. and her boyfriend began having sex when, "[a] short amount of time" later, M.H. heard Doe scream "no, no, no." M.H. got up and saw defendant "jump" back, heard him say something like "okay, okay, I'll stop," and saw him run out of the room.

2

Doe had no recollection of anything going on in the bedroom until "looking up" and seeing defendant "on top of me." He was "moving back and forth," and she felt his penis inside her vagina. She recalls "crying and just like—he left."

Doe did not, immediately following the encounter with defendant, discuss being penetrated—for example, penetration did not come up when she subsequently spoke to M.H., or when she phoned her then fiancée, who is now her domestic partner. But the next day, when Doe visited a sexual assault nurse examiner for a sexual assault response team (SART) exam, she told the nurse she had been penetrated. The nurse found evidence of abrasions in Doe's posterior fourchette that were consistent with a "mounting injury," but also consistent with Doe having certain types of intercourse with her fiancée. The nurse also noted Doe was experiencing pain from urination.

In September 2012, the district attorney filed an information charging defendant with rape of an intoxicated person (§ 261, subd. (a)(3)) and attempted rape of an unconscious person (§ 261, subd. (a)(4)). On the district attorney's motion, the trial court dismissed the attempted rape charge, and the remaining charge went to the jury. Defendant was convicted, and the trial court sentenced him to three years in state prison.

## II. DISCUSSION

Defendant raises three contentions on appeal: (1) the trial court should have instructed the jury a defendant is not guilty of rape of an intoxicated person if he reasonably believed the person had the capacity to consent; (2) the trial court should have instructed the jury on attempted rape of an intoxicated person; (3) and defendant's counsel should have objected to the prosecutor's assertion in closing argument that defendant was no longer presumed innocent.

### A. *Reasonable Belief in Capacity to Consent*

The trial court instructed the jury with a version of CALCRIM No. 1002, which sets forth the elements of rape of an intoxicated person.

3

In reading the instruction, the trial court told the jury such rape has the following elements: (1) defendant had sexual intercourse with a person; (2) defendant and the person were not married; (3) the effects of intoxicants prevented the person from resisting; and (4) "defendant knew or reasonably should have known that the effect of an intoxicating substance prevented [his alleged victim] from resisting." (See § 261, subd. (a)(3) ["Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator [¶] . . . [¶] (3) [w]here [the] person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused."].) The court further instructed an intoxicating substance prevents resistance when it prevents the giving of legal consent—that is, "consent given freely and voluntarily by someone who knows the nature of the act involved."

Over defendant's objection, the trial court omitted a bracketed, optional portion of CALCRIM No. 1002, which reads:

> The defendant is not guilty of this crime if he actually and reasonably believed that the [alleged victim] was capable of consenting to sexual intercourse, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the [alleged victim] was capable of consenting. If the People have not met this burden, you must find the defendant not guilty. (CALCRIM No. 1002.)

The trial court found the evidence insufficient to support instructing the jury on defendant's reasonable-belief-of-capacity-to-consent theory.

We generally review a trial court's denial of a requested instruction as a matter of law. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 824 [140 Cal.Rptr.3d 762].)

The trial court did not err in refusing to give the optional language of the instruction. The key evidence defendant marshals in support of his reasonable-belief-of-capacity-to-consent theory does not show a reasonable belief in Doe's *capacity* to consent. Defendant recounts how Doe, who was already so drunk she had vomited and

4

had "hit a wall," had been put into the bathroom shower by her friends for cleanup. After the friends left, defendant, naked himself, entered the shower and asked if it was "gonna be awkward," and Doe responded "no." Defendant contends this exchange was sufficient for him to reasonably believe Doe was giving consent to intercourse sometime later that night.

Even apart from the fact such a construction of the shower exchange is manifestly unreasonable, whether defendant believed Doe was consenting to intercourse sometime later in the evening is irrelevant if he did not also reasonably believe she was *capable of giving consent* to intercourse despite her intoxication. It is a reasonable belief in the victim's capacity, not consent, that provides a defense to rape of an intoxicated person. (See § 261, subd. (a)(3); CALCRIM No. 1002; *People v. Giardino* (2000) 82 Cal.App.4th 454, 460 [98 Cal.Rptr.2d 315] ["if the victim is so unsound of mind that he or she is incapable of giving legal consent, the fact that he or she may have given actual consent does not prevent a conviction of rape"]; *id.* at p. 471 ["the actual consent of the victim is not a defense to a charge of rape by intoxication, *a belief in the existence of such actual consent is irrelevant*," italics added]; cf. *People v. Dancy* (2002) 102 Cal.App.4th 21, 36 [124 Cal.Rptr.2d 898] [as to rape of an unconscious person who cannot resist, consent (or even belief in advance consent) is irrelevant if defendant knows the victim is unconscious].) Defendant points to no evidence regarding a belief in Doe's *capacity* to consent.

Even if there was an evidentiary basis for giving the additional language regarding actual and reasonable belief in capacity to consent, the trial court's decision to omit it was not prejudicial error in light of the adequacy of the instructions it did give. (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1529 [50 Cal.Rptr.3d 110] (*Ramirez*).) In *Ramirez*, as here, the defendant faced a charge of rape of an intoxicated person. The jury was similarly instructed on the elements of the crime, including the fourth element, which requires proof defendant "*knew, or reasonably should have known, that* [*the alleged*

5

*victim*] *was unable to resist due to her intoxication.*" (*Ibid.*) The defendant requested, but was denied, a general "mistake of fact" instruction based on the theory the defendant mistakenly believed his victim was sufficiently sober to resist.[4] (*Ramirez*, at p. 1527.)

The appellate court concluded there was no prejudicial error in failing to give the "mistake of fact" instruction. (*Ramirez, supra*, 140 Cal.App.4th at p. 1529.) The jury, in convicting the defendant, necessarily found true the fourth element of the crime. This finding—that the defendant reasonably should have known the victim could not resist (i.e., give consent)—meant the jury could not also have found, as a matter of logic, that the defendant had a reasonable belief the victim was capable of giving consent. (*Ibid.*) Put another way, "[a] belief that the victim was able to resist could not be reasonable if the perpetrator 'reasonably should have known' that the victim was unable to resist." (*Ibid.*) Thus, the fourth element of the crime of rape of an intoxicated person necessarily addressed the defense of a reasonable mistake of fact as to whether the victim was too intoxicated to consent, and the trial court did not err in declining to give the more general-purpose mistake of fact instruction. (*Ibid.*; see *People v. Giardino, supra*, 82 Cal.App.4th at p. 472 [equating what are essentially the bracketed portion of CALCRIM No. 1002 and the fourth element referenced in that instruction]; see also *People v. Carrillo* (2008) 163 Cal.App.4th 1028, 1038 [78 Cal.Rtpr.3d 138] [no prejudicial error if the jury necessarily resolved, under other instructions actually given, the issue that would have been raised by an omitted instruction].)

Although defendant here requested the optional "actual and reasonable belief" language in CALCRIM No. 1002, and not the general mistake-of-fact instruction, this

---

[4] The instruction sought, CALJIC No. 4.35, provided: " 'An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if [he] . . . commits an act or omits to act under an actual [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make the act or omission lawful.' " (*Ramirez, supra*, 143 Cal.App.4th at p. 1527.)

6

makes no material difference and requires no different result than in *Ramirez*. Both requested instructions would have served the same purpose of essentially re-phrasing the requirement of element four in CALCRIM No. 1002, ensuring no defendant is convicted unless he knew or reasonably should have known the victim was incapable of giving consent due to intoxication.[5] Had defendant wanted to argue to the jury, in connection with the fourth element, that he had a reasonable belief the victim could consent, he was free to do so. Moreover, the jury in this case, by finding element four true, necessarily found any belief by defendant that the victim had capacity to consent was unreasonable. We therefore conclude *Ramirez* governs this case and reject defendant's claim the trial court prejudicially erred by not giving the full CALCRIM No. 1002 instruction.

**B.** *Attempted Rape*

Defendant never requested, and the trial court never gave, a jury instruction on attempted rape of an intoxicated person. Nonetheless, he now asserts the trial court was obligated to instruct on attempted rape sua sponte, contending the crime is a lesser included offense of rape of an intoxicated person.

Penal Code section 1159 provides: "The jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." (§ 1159.) While the "disjunctive

---

[5] CALCRIM No. 1002, whose element four, as noted, addresses the mistake-of-fact defense applicable to rape of an intoxicated person, is in stark contrast to CALCRIM No. 1000, regarding forcible rape. The parallel "consent" element in CALCRIM No. 1000 merely requires proof of lack of consent, without regard to defendant's reasonable belief as to consent. CALCRIM No. 1000 thus, in its recitation of the elements, does not address mistake-of-fact. Accordingly, a specialized mistake-of-fact instruction, a *Mayberry* instruction (see *People v. Mayberry* (1975) 15 Cal.3d 143, 153–158 [125 Cal.Rptr. 745, 542 P.2d 1337]), is warranted when sufficient evidence suggests the defendant had an actual and reasonable belief in consent. (*People v. Hernandez* (2009) 180 Cal.App.4th 337, 344 [103 Cal.Rptr.3d 101].) This is not a forcible rape case under section 261, subdivision (a)(1) and CALCRIM No. 1000 was not given in any form.

7

language" of the statute might suggest *both* lesser included offenses and attempts should be treated equally when it comes to the obligation to instruct sua sponte (*People v. Bailey* (2012) 54 Cal.4th 740, 752 [143 Cal.Rptr.3d 647, 279 P.3d 1120] (*Bailey*); see *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1454 [89 Cal.Rptr.3d 402] [citing section 1159 as creating an obligation to instruct on attempt]), this is not so.  Our Supreme Court has made the "qualification that under section 1159, ' "[a] defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime." ' "  (*Bailey, supra,* 54 Cal.4th at p. 752.)  A trial court therefore has no sua sponte duty to instruct on attempt unless it is also a lesser included offense.  (*Id.* at p. 753 [no duty to instruct on attempted escape because it had more specific intent requirement than crime of escape].)

" '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' "  (*People v. Licas* (2007) 41 Cal.4th 362, 366 (*Licas*).)  Where the accusatory pleading, as in this case, tracks the statutory language rather than reciting factual details of the offense, "only the statutory elements test is relevant in determining if an uncharged crime is a lesser included offense of that charged."  (*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 981 [68 Rptr.3d 877].)  We determine de novo whether one crime is a lesser included offense of another.  (*Licas*, *supra*, 41 Cal.4th at p. 366.)

*Bailey*, applying the elements test, concluded attempted escape is not a lesser included offense of escape, and therefore a trial court has no sua sponte obligation to instruct on attempt when only a completed escape is charged.  (*Bailey*, *supra*, 54 Cal.4th at pp. 749, 753.)  Escape, reasoned *Bailey*, is a general intent crime, while attempted escape requires proof of an additional element, namely specific intent to escape.  (*Id.* at p. 749; see § 21a [attempt "consists of two elements:  a specific intent to commit the

8

crime, and a direct but ineffectual act done toward its commission"].) The jury in *Bailey* rendered a verdict only on a charge of escape. So it never considered whether the defendant, when he sawed through prison barriers, acted with the specific intent to escape prison altogether or, as the defendant claimed, acted with the intent to enter another area of the prison to assault an inmate. (*Id.* at pp. 745, 751, 754.) Only the former intent, not the latter, would support a conviction of attempted escape. Thus, the jury could reasonably have concluded the requisite specific intent for attempt was lacking. This left the court powerless to "reduce" the defendant's otherwise erroneous conviction of escape, to one of attempted escape. (*Id.* at p. 754.)

*Bailey* thus highlights a non-intuitive aspect of the relationship between attempts and completed crimes: while it might seem an attempt would naturally be a lesser included offense, this is not necessarily so. Attempts are only lesser included offenses if the sole distinction between the attempt and the completed offense is completion of the act constituting the crime. (*People v. Ngo* (2014) 225 Cal.App.4th 126, 156 [170 Cal.Rptr.3d 90] (*Ngo*).) If the attempt requires a heightened mental state, as is the case with attempts of many general intent crimes, the attempt requires proof of an additional element and is therefore not a lesser included offense. (*Bailey, supra*, 54 Cal.4th at p. 753 ["where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense," it is not a lesser included offense]; *People v. Strunk* (1995) 31 Cal.App.4th 265, 271 [36 Cal.Rptr.2d 868] ["an attempt is a specific intent crime and does not fit within the definition of a necessarily included offense of a general intent crime"]; *Ngo*, at p. 156 ["when the completed offense is a general intent crime, an attempt to commit that offense does not meet the definition of a lesser included offense under the elements test because the attempted offense includes a specific intent element not included in the complete offense"].)

Under the *Bailey* framework and elements test, attempted rape of an intoxicated person is not a lesser included offense of rape of an intoxicated person.

Rape of an intoxicated person (§ 261, subd. (a)(3)) is a general intent crime. (*People v. Linwood* (2003) 105 Cal.App.4th 59, 70 [129 Cal.Rtpr.2d 73] (*Linwood*).) This is so even though there is an additional knowledge requirement—that "the accused either must have known or reasonably should have known of the victim's particular condition that precluded consent." (*Id.* at p. 71; § 261, subd. (a)(3).) In other words, the general intent and knowledge requirements are separate elements, and the latter does not transform rape of an intoxicated person into a specific intent crime. (*Linwood*, at p. 70.) Thus, rape of an intoxicated person requires both (1) intent to engage in sexual intercourse and (2) either actual knowledge of the intoxicated victim's incapacity or negligent belief the victim had the capacity to consent. (*Id.* at pp. 70–71; see *People v. Dancy, supra*, 102 Cal.App.4th at p. 37 [under section 261, subdivision (a)(4), defendant must have intent to have intercourse, plus constructive knowledge victim is unconscious of nature of act].)

Attempted rape, in accord with section 21a governing attempts, "has two elements: (1) the specific intent to commit the crime of rape and (2) a direct, although ineffectual, act toward its commission." (*People v. Clark* (2011) 52 Cal.4th 856, 948 [131 Cal.Rptr.3d 225, 261 P.3d 243] (*Clark*), disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].) The mere intent to have sexual contact is not a sufficiently culpable mental state for attempted rape. As to attempted forcible rape, "[i]ntent to commit [that crime] requires (1) the intent to commit the act of sexual intercourse; (2) against the will of the victim [citation]; (3) by any of the means described in section 261, subdivision (a)(2)," namely "violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (*People v. Lee* (2011) 51 Cal.4th 620, 633 [122 Cal.Rptr.3d 117, 248 P.3d 651] (*Lee*); § 261, subd. (a)(2); see also *People v. Davis* (1995) 10 Cal.4th 463, 509 [41 Cal.Rptr.2d 826, 896 P.2d 119] [" 'The essential element of [assault with intent to commit rape] is the intent to commit the act against the will of the complainant. The offense is complete if at

10

any moment during the assault the accused intends to use whatever force may be required.' "]; *People v. Dillon* (2009) 174 Cal.App.4th 1367, 1378 [95 Cal.Rptr.3d 449] (*Dillon*) [the crime of assault with intent to rape "requires not only the specific intent to commit the underlying sexual act, but a specific intent to commit that act without the consent of the victim"]; see also *Hall v. Cullen* (N.D. Cal., July 29, 2010, No. C 09-5299 PJH) 2010 WL 2991663, *1, *16–18 [granting habeas relief following *Dillon*, because jury instructions had not clearly stated the defendant, to commit assault with intent to commit sexual penetration, must have had the specific intent not only to touch the victim, but to do so without consent].) Extrapolating to the crime of attempted rape of an intoxicated person, a defendant, to be guilty, must not only intend to have intercourse, but to have intercourse with a person incapacitated by intoxication. (See § 261, subd. (a)(3).)

The significance of the different mental states required for attempted rape of an intoxicated person and actual rape, is illustrated by the way in which a defendant's beliefs can affect guilt. As a specific intent crime, attempted rape of an intoxicated person hinges on defendant's actual intent and, thus, is subject to a good faith, *unreasonable* mistake of fact defense. (*People v. Tufunga* (1999) 21 Cal.4th 935, 943 [90 Cal.Rptr.2d 143, 987 P.2d 168] [" ' "Although an intent to steal may ordinarily be inferred when one person takes the property of another, particularly if he takes it by force, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of either theft or robbery" ' "]; *People v. Givan* (Jan. 20, 2015, F066825) __ Cal.App.4th __ [2015 WL 251428] *1, *4, *8 ["an unreasonable mistake of fact may be asserted in a specific intent crime"]; *People v. Lawson* (2013) 215 Cal.App.4th 108, 115 [155 Cal.Rptr.3d 236] [for specific intent crimes, mistake of fact can be unreasonable]; *People v. Mares* (2007) 155 Cal.App.4th 1007, 1010 [66 Cal.Rptr.3d 580] ["trial court erred when it instructed jurors that the mistake of fact had to be actual and reasonable, when in fact an unreasonable belief was sufficient to negate specific intent"]; *People v. Jacobs* (1991) 230 Cal.App.3d 1337, 1343–1344 [281 Rptr. 733] [an "honest but

11

unreasonable belief in the need to defend oneself against imminent danger negated the mental state of malice aforethought required for murder"]; cf. *People v. Sojka* (2011) 196 Cal.App.4th 733, 739 [126 Cal.Rptr.3d 400] [noting "neither lawyer informed the jury that Sojka's mistaken but unreasonable belief in consent was a defense to attempted rape by force," "[t]he failure to instruct on the potential effect of Sojka's good faith but mistaken belief was prejudicial" and what the defendant was thinking was not "irrelevant," yet also stating trial court should have instructed on "reasonable" mistake of fact].)

Actual rape of an intoxicated person, however, is a general intent crime, and, thus, is subject to a mistake of fact defense *only* if the mistake was objectively reasonable. (See *Linwood, supra*, 105 Cal.App.4th at p. 71 [a defendant is guilty of rape of an intoxicated person despite a good faith belief in ability to consent so long as he *should have known* the victim lacked capacity]; see generally CALJIC No. 4.35, use note ["In specific intent or mental state crimes, delete the bracketed phrase 'and reasonable.' Mistakes of fact, however, must be reasonable to negate general criminal intent."].)

More follows from the categorization of rape and attempted rape as general and specific intent crimes. Intoxication can negate the required mental state of a specific intent crime, such as attempted rape of an intoxicated person. (§ 29.4 (formerly § 22); *People v. Atkins* (2001) 25 Cal.4th 76, 81–82 [104 Cal.Rtpr.2d 738, 18 P.3d 660] (*Atkins*); *People v. Cain* (1995) 10 Cal.4th 1, 45 [40 Cal.Rptr.2d 481, 892 P.2d 1224] [suggesting intoxication could negate specific intent for attempted rape]; *Clark, supra*, 5 Cal.4th at p. 1021 [voluntary intoxication not a defense to rape, but could negate the specific intent to rape required for felony murder committed in the course of a rape]; see generally *People v. Navarette* (2003) 30 Cal.4th 458, 503–504 [133 Cal.Rptr.2d 89, 66 P.3d 1182] [discussing intoxication's role in the "district spheres" of general and specific intent crimes].) Intoxication cannot, however, negate general intent, the mental state required for actual rape of an intoxicated person. (§ 29.4, subd. (a)–(b) (formerly

12

§ 22) ["Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states" such as "purpose, intent, [or] knowledge" except such evidence "is admissible . . . on the issue of whether or not the defendant actually formed a required specific intent"]; *People v. Stanley* (1992) 6 Cal.App.4th 700, 706 [7 Cal.Rptr.2d 881] [voluntary intoxication cannot be used to support a defense to rape based upon a reasonable mistake of fact].)

In short, for a jury to find defendant guilty of attempted rape of an intoxicated person, the prosecution must prove an intent above, beyond, and apart from the mental state required for the completed crime. The facts of this case underscore the point. Throughout, defendant claimed he believed Doe consented to having intercourse and he had no intent of having sex against her will. If a jury had credited this assertion and found defendant did not have the requisite specific intent, it would have had to acquit him of attempted rape, regardless of the objective unreasonableness of his belief. That would not, however, preclude a conviction of actual rape. As to the completed crime, defendant's subjective belief was beside the point—if, as the jury found, he should have known the victim was incapable of freely giving consent. (§ 261, subd. (a)(3); see also *People v. Williams* (1992) 4 Cal.4th 354, 361 [14 Cal.Rptr.2d 441, 841 P.2d 961] [mistaken belief in consent must be objectively reasonable to negate mental state required for completed rape].) In other words, because of the significantly different intent requirements, a not guilty verdict on attempted rape of an intoxicated person is not inherently irreconcilable with a guilty verdict on actual rape of an intoxicated person.

Defendant points to two older Supreme Court cases which suggest attempted rape might, at least in some circumstances, be a lesser included offense of rape. In *Atkins, supra*, 25 Cal.4th at page 88, the court addressed the relationship between the crimes of arson and its lesser included offense, reckless burning. The defendant argued arson, as the more "serious crime . . . should have a more culpable mental state." (*Ibid.*) In explaining why this was not necessarily so, the court, in dicta, gave this counterexample:

13

"attempted rape, a specific intent crime, is a lesser included offense of rape, a general intent crime." (*Ibid.*) In support of this statement, the court cited *People v. Kelly* (1992) 1 Cal.4th 495 [3 Cal.Rptr.2d 677, 822 P.2d 385] (*Kelly*). In *Kelly*, the defendant was convicted of forcible rape under section 261, but the evidence suggested he may not have penetrated the victim until after death. (*Kelly*, at pp. 511, 524.) As there is no rape of a corpse, the trial court's instruction to the contrary was error. (*Id.* at pp. 524, 527–528.) The court then stated: "The error would not, however, have affected a conviction of the lesser included offense of attempted rape. When a greater offense must be reversed, but a lesser included offense could be affirmed, we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense." (*Id.* at p. 528.) The court assumed the prosecution, in light of the ultimate affirmance of a death sentence on another charge, would simply accept the reduction. (*Ibid.*)

Neither the dicta in *Atkins* nor the expedient charge reduction in *Kelly* persuades us the analytical framework set out in *Bailey* is not controlling. Both *Atkins* and *Kelly* significantly predate *Bailey*, and neither applies the elements test set forth in that case. In fact, neither *Atkins* nor *Kelly* engaged in any analysis to establish that attempted rape is a lesser included offense of forcible rape. Furthermore, the Supreme Court, in other, more recent cases, has recognized that rape and attempted rape require different kinds of intent. (*People v. Rundle* (2008) 43 Cal.4th 76, 138, fn. 29 [74 Cal.Rptr.3d 454, 180 P.3d 224] ["we emphasize that defendant was charged with attempted forcible rape, which, unlike the crime of forcible rape, is a specific intent crime. [Citation.] Accordingly, in the following discussion, our references to the specific intent to commit rape are made in the context of discussing the sufficiency of the evidence of the charges in the present case, and do not implicate the basic distinction between the intent elements of attempted rape (specific intent) and rape (general intent)."], disapproved on other grounds by *People v. Doolin, supra*, 45 Cal.4th at p. 421, fn. 22; *People v. Jones* (2003) 29 Cal.4th 1229, 1257 [131 Cal.Rptr.2d 468, 64 P.3d 762] [noting various crimes the defendant could be

14

convicted of depending on whether or not he harbored a specific rather than a general intent to rape]; see also *Lee*, *supra*, 51 Cal.4th at p. 633 [noting intent for attempted forcible rape requires more than intent to have intercourse].)  Finally, *Bailey* itself marginalizes *Kelly*, noting it does not stand for the proposition that any attempt is a lesser included offense and explaining " '[t]he law of "attempt" is complex and fraught with intricacies and doctrinal divergences.' " (*Bailey*, *supra*, 54 Cal.4th at p. 753.)  Thus, even if *Kelly* "applied the general principle that attempt is a lesser included offense of any completed crime" that principle is *not* applicable "where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense." (*Bailey*, at p. 753.)

We therefore conclude *Bailey* is controlling and compels the conclusion attempted rape of an intoxicated person is not a lesser included offense of rape of an intoxicated person.  The trial court was therefore not obligated to instruct, sua sponte, on attempt.

## C. *Closing Argument*

Before closing arguments, the trial court instructed the jury to follow the court's statements of the law, even should counsel argue something different.  It also told the jury not to be biased against defendant simply because he had been arrested, charged, and brought to trial.  Further, defendant was to be presumed innocent, and the presumption required the People to prove guilt beyond a reasonable doubt.

During closing argument, the prosecutor stated, "I told you [in my opening statement] that you would hear from [Jane Doe and M.H].  I told you that I would come before you again and I would argue how you can and how you should find the defendant guilty of rape of an intoxicated woman, and today is that day where I get to argue that you should because, see, today for the first time when I talked to you in opening statements Mr. Braslaw was presumed innocent.  *He is no longer presumed innocent.* You have heard evidence in this case and now I can argue to you why you can and why you should find him guilty in this case."  The prosecutor then explained the case involved

15

the charge of rape of an intoxicated person and stated "I need to prove to you beyond a reasonable doubt" the various elements of the crime.

Defense counsel made no objection. Instead, in his closing argument, he told the jury to heed the court's instruction that defendant is presumed innocent and the people had the burden of proof. Now on appeal, defendant asserts his trial counsel was ineffective for not objecting to the prosecutor's italicized remarks as misconduct.

We conclude the prosecutor's remarks did not constitute misconduct, and thus conclude there was no ineffective assistance. (See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1140 [124 Cal.Rptr.2d 373, 52 P.3d 572] [no ineffective assistance based on failure to object if objection would not have been meritorious].)

In context, the prosecutor's argument restated, "in a rhetorical manner," the law as stated in the trial court's jury instructions, and as set forth in section 1096, that " 'the presumption of innocence obtains until guilt is proven.' " (*People v. Booker* (2011) 51 Cal.4th 141, 185 [119 Cal.Rptr.3d 722, 245 P.3d 366] (*Booker*); see § 1096 ["the effect of this presumption is only to place upon the state the burden of proving him or her guilty beyond a reasonable doubt"].) The prosecutor thus essentially and permissibly argued that while defendant was initially presumed innocent, the evidence had overcome the presumption. (*Booker*, at pp. 183–185 [no misconduct in remark " 'The defendant was presumed innocent until the contrary was shown. That presumption should have left many days ago. He doesn't stay presumed innocent.' "]; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189–190 [207 Cal.Rtpr. 431] [no misconduct in remark " 'once the evidence is complete . . .—and that's the stage we're at now—the case has been proved to you beyond any reasonable doubt. I mean, it's overwhelming. There is no more presumption of innocence.' "], italics omitted.)

The prosecutor's statement here is readily distinguished from that in *United States v. Perlaza* (9th Cir. 2006) 439 F.3d 1149, 1169, in which the prosecutor argued the presumption of innocence "is going to vanish when you start deliberating," which is

16

"when the presumption of guilt is going to take over you." (Italics omitted.) Here, the prosecutor never mentioned a "presumption of guilt" or otherwise suggested she bore a burden other than proof beyond a reasonable doubt. (See *Booker*, *supra*, 51 Cal.4th at p. 185 [distinguishing *Perlaza* as based on the prosecutor's incorrect statement of law, the trial court's initial ratification of the misstatement, and the absence of a curative instruction clarifying the prosecutor's actual burden].)

But even had the prosecutor transgressed here, "prejudice is lacking under either the state law (see *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) or the federal constitutional standard of review (see *Chapman* [*v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824])." (*Booker*, *supra*, 51 Cal.4th at p. 186.) Given the trial court's closing instructions and the context of the prosecutor's brief statement, the jury was not laboring under a misapprehension as to the law. (*Ibid.*)

### III.   DISPOSITION

The judgment is affirmed.

_____

Banke, J.


We concur:


_____

Humes, P. J.


_____

Margulies, J.


A138325, *People v. Braslaw*

18

Trial Judge:                          Honorable Mark Boessenecker

Trial Court:                         Napa County Superior Court


Jeffrey S. Kross, under appointment by the Court of Appeal for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, René A. Chacón and Laurence K. Sullivan, Supervising Deputy Attorneys General, for Plaintiff and Respondent.