Filed 10/15/15  P. v. Perryman CA3

<u>**NOT**</u> <u>**TO**</u> <u>**BE**</u> <u>**PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075570 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03149) |
| v. | |
| STACEY ANN PERRYMAN, | |
| Defendant and Appellant. | |

Codefendants Stacey Ann Perryman and Bryan David Denton were on trial for murder, burglary, robbery, arson of an inhabited structure, and a special circumstance allegation that the murder occurred in the course of a burglary.  The trial court granted codefendant Denton's mistrial motion midtrial (based on the prosecutor's failure to disclose evidence to the defense).[1]  The jury found codefendant Perryman (defendant)

---

[1]  Briefing in Denton's separate appeal (case No. C077361) just recently commenced.

guilty only of arson of an inhabited structure. (Pen. Code, § 451, subd. (b).) The trial court sentenced her to the upper term of eight years in state prison.

On appeal, defendant argues there is insufficient evidence of the arson element of "burning," i.e., a fire's *consumption* of any portion of a structure. (*People v. Haggerty* (1873) 46 Cal. 354, 355; *In re Jesse L.* (1990) 221 Cal.App.3d 161, 166 (*Jesse L.*).) She also asserts the trial court erred in failing to instruct on the lesser offenses of attempted arson and unlawfully causing a fire. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties provide lengthy accounts of all circumstances underlying the charges. Given the jury's verdicts and the nature of defendant's arguments, we do not need to delve so deeply for purposes of this appeal.

The history between defendant and codefendant Denton, or between defendant and the victim is not germane. It is sufficient to note that the victim had stayed at a motel in Sacramento between February and March 2012, moving to an apartment in April. The manager of the motel introduced defendant (another motel occupant) to the victim as a person down on her luck when her employer-provided truck was stolen, after which defendant stayed for a week or two at the victim's apartment. Defendant told a friend she was providing in-home care (she was a traveling registered nurse) in exchange for her lodging. When she moved out of the victim's apartment, defendant told friends the victim had asked if he could pimp for her. Defendant stayed at a friend's trailer for a couple of days before having the friend drop her off at a downtown bus station. She told him she planned to head home, which the friend thought was in Bakersfield. The records of her nursing registry indicated she was working in Palmdale on various dates between May 5 and May 24, 2012.

On May 18, defendant rented a truck in Bakersfield. Defendant dropped off the truck in Sacramento on May 20. The crimes took place in the interim.

On May 19, various residents of the victim's apartment complex saw a woman and a man moving items from the victim's apartment to a rental truck. By afternoon, both the rental truck and the victim's truck were gone. The following morning, a neighbor saw a woman run from the victim's apartment to the victim's truck. After hearing a loud noise in the victim's apartment, the neighbor saw a man running from it and get into the truck with the woman, which then drove off. Noticing smoke, the neighbor went to look through the victim's bedroom window, where he saw things in disarray. Another neighbor noticed that the blinds in the front window of the victim's apartment had melted, and the window was darkened. She called 911.

A paramedic arriving at the apartment saw smoke, but did not find any active fire. He found the victim's dead body in a closet, lying on his back with his head near the door. The victim's head and chest were very charred. A fire investigator determined that there had been an intentional fire; an unknown accelerant had been poured throughout the apartment on the floor and carpet, and then ignited with a match or lighter. The investigator, a detective describing photographs of the crime scene, and the pathologist examining the body at the scene testified that the closet and the hallway outside it had sustained fire damage, with the most extensive fire damage present in the closet where the body lay (the walls blackened from fire damage and the installed carpeting having burned away). There was a wide burn pattern down the hall and out to the installed living room carpet (which had burned through to the subflooring), as well as installed carpeting burned away behind the bedroom door. The fire had extinguished itself for lack of ventilation. (Neither the prosecutor nor defense counsel dwelt on the extent of damage at any length in their examinations.) The apartment had been stripped of its furnishings.

3

The cause of death was multiple stab wounds (24) to the victim's head and neck. The extensive burns to his body occurred after he had stopped breathing.

The victim's truck was found burning in the desert near Mojave on May 23. Defendant had been staying in a Motel 6 nearby. She was traced to a Bakersfield motel, where she and codefendant Denton were arrested. A Stockton storage unit in her name contained items belonging to the victim. While awaiting trial, codefendant Denton told another inmate he had killed the victim. It was not planned in advance, but happened during an argument about the victim pimping out defendant. Codefendant Denton also had started the fire.

## DISCUSSION

### 1.0 The Evidence of Burning Is Substantial

Under the authority cited above, evidence of mere blackening of a structure (as opposed to fire consuming any part of it) is insufficient to establish this element of arson. Defendant, focusing exclusively on the testimony at trial in her opening brief, asserts the evidence does not establish *consumption* as opposed to mere discoloration.[2] After the People pointed out that defendant had failed to designate as part of the record on appeal the photographs of the fire's aftermath introduced as exhibits (a lacuna that the People remedied), defendant's only response was that her time to designate exhibits had not expired as of the time of the People's brief (Cal. Rules of Court, rule 8.224(a)(1)), without any analysis of the extent to which the *photographs* establish the element of burning.

---

[2] Defendant also asserts in passing that there is insufficient evidence that the structure was inhabited. Having failed to provide any argument in support of this assertion, she has abandoned the issue. (See *People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10.)

At all times, the burden is on an appellant to establish prejudicial error.  To this end, a defendant seeking to challenge the sufficiency of the evidence must engage *all* the relevant evidence as part of the analysis; failure to fulfill this duty forfeits our plenary consideration of the argument.  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573-1574.)  Defendant's failure to provide any analysis of the photographs thus absolves us of any duty to respond beyond our observations that the photographs and the testimony summarized above are sufficient to demonstrate the fire consumed a portion of the structure.  (*People v. Lee* (1994) 24 Cal.App.4th 1773, 1778 [installed carpeting is a fixture that is part of a structure for purposes of arson]; *Jesse L.*, *supra*, 221 Cal.App.3d at p. 167 [testimony about "burn patterns" sufficient to establish consumption].)

**2.0  A Duty to Instruct Sua Sponte on Lesser Included Offenses Did Not Exist**

2.1  Attempted Arson

A trial court has the duty to instruct sua sponte on lesser included offenses that have evidence to support them.  (*People v. Gutierrez* (2009) 45 Cal.4th 789, 826.)  The determination of what constitutes a lesser included offense is based on the statutory elements of the greater offense, unless the accusatory pleading alleges factual details of the offense beyond the statutory language.  (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1247 (*Braslaw*).)  Other than including the location of the arson, the information in the case at bar employed only the statutory language.[3]

As a general proposition, attempt is a lesser included offense of any completed crime.  However, this is not true where an attempt requires a "particularized intent that goes beyond what is required by the completed offense"; thus, because attempt is a crime of specific intent, it is not a lesser included offense of crimes of general intent.  (*People v.*

---

[3]  The information alleges that defendant "did willfully, unlawfully, and maliciously set fire to and burn and cause to be burned an inhabited structure" located on Selby Ranch Road in Sacramento.

*Bailey* (2012) 54 Cal.4th 740, 752-753; accord, *Braslaw*, *supra*, 233 Cal.App.4th at p. 1248.)  Arson is a crime of general intent, as *People v. Atkins* (2001) 25 Cal.4th 76 (*Atkins*) made abundantly clear in disapproving our decisions to the contrary (*id.* at pp. 79, 81).  As a result, attempted arson cannot be a lesser included offense subject to a duty to instruct sua sponte.

In her reply brief, defendant asserts the arson statute expressly provides for the liability of an accomplice (on which alternate theory the prosecution in the present case proceeded, and on which the jury apparently rested its verdict), which makes derivative arson a crime of specific intent.  However, accomplice liability rests on "the intent to encourage and bring about conduct that is criminal, *not* the specific intent that is an element of the target offense . . . ."  (*People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5, italics added; accord, *People v. Mendoza* (1998) 18 Cal.4th 1114, 1122 [mental state for vicarious liability "is *different from* the mental state necessary for conviction as the actual perpetrator" (italics added)].)  Consequently, attempted arson was not a lesser included offense even in the context of accomplice liability.

In any event, as we have rejected defendant's claim of insufficient evidence of burning, the evidence showed only a completed arson, not ineffectual efforts to commit arson.  Thus, substantial evidence did not raise any question about any of the elements of arson warranting an instruction on a lesser crime.  (Cf. *People v. Ochoa* (1998) 19 Cal.4th 353, 422-423 [evidence of sudden quarrel or heat of passion lacking].)  That the jury might have found defendant less culpable for the arson (as she argues) is not any basis for instructing on a lesser offense not warranted under the *evidence*.

2.2.  Unlawfully Causing a Fire

This *is* a lesser offense of arson; "[t]he offense of unlawfully causing a fire is principally distinguished from arson by the culpability standard of recklessness."  (*In re Stonewall F.* (1989) 208 Cal.App.3d 1054, 1066, disapproved on other grounds in *Atkins*,

*supra*, 25 Cal.4th at pp. 83-84; see *People v. Mendoza* (2000) 24 Cal.4th 130, 174-175 [declining to resolve point].)

Here, defendant argues the jury could have found she (or her accomplice) had intended only to hinder identification of the victim rather than burn the apartment, which was simply a reckless consequence of their efforts. However, the fire investigator had described the presence of the accelerant *throughout* the apartment, well away from the victim's body. As a result, "[t]he evidence here is not substantial enough to merit consideration by the jury of the possibility that defendant recklessly set fire to a bed on which he had tied the victim without intending also to burn the house." (*People v. Mendoza*, *supra*, 24 Cal.4th at p. 175 [rejecting similar contention].) Again, it is not of any moment that the jury may have found defendant less culpable such that she was entitled to instruction on a lesser charge regardless of the evidence.

## DISPOSITION

The judgment is affirmed.

<u>    BUTZ    </u>, J.


We concur:


<u>    BLEASE    </u>, Acting P. J.


<u>    HOCH    </u>, J.