Filed 3/8/16  P. v. Lind CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFFERY COWAN LIND,<br><br>    Defendant and Appellant. | 2d Crim. No. B262092<br>(Super. Ct. No. 1354711)<br>(Santa Barbara County) |

A jury convicted appellant Jeffery Cowan Lind of offering a false instrument for recording (Pen. Code, § 115, subd. (a)), conspiracy to offer a false instrument for recording (§ 182, subd. (a)(1)), and perjury (§ 118, subd. (a)).  The trial court suspended execution of a three-year, eight-month sentence and imposed five years of felony probation with terms and conditions including 30 days in jail.  Lind contends that the trial court erred by not instructing the jury on mistake-of-fact and mistake-of-law defenses and not instructing sua sponte on lesser included attempted offenses, that the evidence was insufficient to show more than attempted offenses, that the prosecutor committed misconduct by inflaming the jury with irrelevant evidence of his motive, and that cumulative error warrants reversal.  We affirm.

FACTS

*Lind Threatens a Witness at His Son's Trial*

Lind's son was charged with driving under the influence. During the trial, Lind was "pacing back and forth" outside of the courtroom. He called the district attorney's office and left a voice message stating that his son is in an "unlawful" proceeding "[that's] going to cost the city or the county . . . a tremendous amount of money if [it is] not stopped immediately." He told the district attorney to call him back, stating, "You'll be very glad if you did and very sorry if you don't."

Lind encountered Officer Robert Ortega sitting outside the courtroom. Officer Ortega had arrested Lind's son and was waiting to be called as a witness in the case. Lind shook Officer Ortega's hand and engaged him in conversation. During their interaction, Lind exhibited aggressive body language: pointing and shaking his hand at Officer Ortega and the courtroom.[1] Officer Ortega walked outside of the courthouse. He advised the bailiff that he felt Lind was attempting to intimidate him prior to his testimony. Lind was arrested.

*Lind Is Charged with Witness Intimidation*

The district attorney's office charged Lind with witness intimidation (§ 136.1) and obstructing an executive officer in performance of duties (§ 69). The case came before Judge Kay Kuns. Representing himself, Lind "demand[ed] . . . the court to discharge all charges in the interest of justice for absolute lack of cause and lack of jurisdiction . . . [,] pointing out the criminal acts being committed against Jeffery Cowan Lind by this court, specifically the magistrate Kay S. Kuns, Judge." He demanded that Judge Kuns dismiss the charges "within three judicial days or accordingly show cause why [the] judge should not be charged with treasonous acts." Judge Kuns denied the motion.

---

[1] The record contains no evidence of what they said to one another because the security camera footage that was played for the jury lacked audio and Officer Ortega did not testify.

2

*Lind Demands $77 Million in Damages from Judge Kuns*

Lind sent a set of documents to Judge Kuns's chambers. He left another set at her home and sent a copy to the Santa Barbara Risk Management Office. One of the documents was entitled "National Standard Damage Claim Form" and another was entitled "Notice and Demand for Damages." These documents "were nonsensical and difficult to understand." They accused Judge Kuns of numerous immoral and criminal acts, including treason, insurrection, piracy on the high seas, environmental terrorism, and violating three of the "Ten Commandments of God's Laws."[2] Lind claimed that she was liable for $77,763,000 in monetary damages for not dismissing his case.

The "Notice and Demand for Damages" stated that Judge Kuns's "immediate visible property . . . shall, at minimum, be the restitution and penance" for her alleged transgressions. "Therefore," it continued, "injured party demands that you execute and deliver to injured party . . . a quitclaim deed to remise, release and forever quitclaim to injured party the aforementioned visible property . . . ."

*Lind Researches Judge Kuns's Property*

Two days later, Lind's codefendant, Dee Thomas Murphy, went to the Santa Maria branch of the Santa Barbara Assessor and Clerk Recorder's office. Murphy told employee Marlene Ashcom that "he had the name of a person and he needed to find out what their particular address was." He gave Ashcom the name "Kay Kuns" without identifying Kuns as a judge. Ashcom helped him use the computer kiosk to obtain information about Judge Kuns's property, including its physical and mailing addresses, its assessed value, and a list of recorded deeds. He purchased a printout of this information.

Murphy told Ashcom that he needed the information because "this person, Kay Kuns, had committed . . . criminal acts and . . . had caused injury to many people

---

[2] Specifically, Lind accused Judge Kuns of violating the Eighth Commandment ("Thou shalt not steal"), the Ninth Commandment ("Thou shalt not bear false witness against thy neighbor"), and the Tenth Commandment ("Thou shalt not covet . . . any thing that is thy neighbor's").

and . . . needed to be held accountable for that." Murphy further said that he planned on recording a "Notice of Intent to Preserve Interest" (NIPI) on behalf of his "client" to preserve "rights that he felt they had to her property." He showed Ashcom the "National Standard Damage Claim Form" that Lind had sent Judge Kuns two days earlier. He said "he had obtained the paperwork from the NSEA."

Ashcom informed Murphy that based on the circumstances he was describing, a NIPI is not a document he should record because he did not own the property. Murphy "argued . . . that he had a right to [record the NIPI] because they had an interest in [Judge Kuns's] property based on [the] charges they had against her." Ashcom told him that if he recorded the document, her office would notify the district attorney's office. Murphy stated, "Good, because we plan on notifying them ourselves as well as other agencies."

After Ashcom's encounter with Murphy, several persons within Santa Barbara County were notified about what Murphy was attempting to do, including Senior Deputy County Counsel Kevin Ready. Ready told the recorder's office that someone with an interest in a property is allowed to record a NIPI, but if a person does not have a current interest in the property, recording a NIPI "would be improper." Ready instructed the recorder's office that if Murphy attempted to record a NIPI on Judge Kuns's property, they should accept the document and tell him they would review it, but they should not record it.

*Lind Attempts to Record the NIPI on Judge Kuns's Property*

Eight days later, Murphy returned to the recorder's office and presented a NIPI on Judge Kuns's property signed by Lind. The NIPI did not identify the nature of Lind's interest,[3] but stated that the Santa Barbara Risk Management Office was the "[l]ocation of document creating or evidencing interest in claimant."

Ashcom took the document into the back and made a copy of it. Noticing that it was not an original, she returned it to Murphy and told him that they could not

---

[3] It stated only "See attached copy of Claim Cover Sheet."

4

accept a photocopy.  Murphy returned with an original, which the recorder's office received but did not record.  Ashcom told him that somebody would contact him by the end of the day and "let him know one way or the other if [they'd] be able to record the document."

After Murphy left, Ready contacted him by telephone regarding the NIPI. Ready told Murphy that Lind "[had] to have an interest in the property" to record the NIPI.  Murphy told Ready that Lind did have an interest.  Ready asked what the interest was.  Murphy said he had "filed a claim" with six or seven different government offices. Ready asked for a copy.  Within a half hour, Murphy emailed Ready the packet of documents that included the "National Standard Damage Claim Form" and "Notice and Demand for Damages."  Lind was cc'd on the email.

*Lind Again Attempts to Record the NIPI*

Murphy returned to the recorder's office four days later and "asked [employee Eva Chavez] to take a few pages that he forgot to submit the first time with . . . his document."  Chavez told him she could not accept them because they "no longer had his document."  He smirked and said, "Yes, you can, and, yes, you will." Before leaving, he gave her a document entitled "Notice To Clerk and Recorder," which stated that "[o]ne of the people of the state, having superior standing, has convened a common law court of record and has initiated lawful action against one of his purported 'public servants' that has trespassed upon his rights.  The Tribunal of this action . . . has presented a [NIPI] for the County Clerk/Recorder of this County to record."  (Fn. omitted.)  It further stated that "all documents" are recorded the minute they are received and the recorder's refusal to do so "is considered criminal . . . and . . . is punishable by fines and imprisonment."

*Criminal Investigation*

Jennifer Glimp, an investigator for the district attorney, reviewed emails between Lind and Murphy that she obtained through a search warrant.  The emails show that Lind and Murphy together registered websites for a "National Standards Enforcement Agency" (NSEA) and created the NSEA forms that were later completed

5

and sent to Judge Kuns and Risk Management. Lind informed Glimp that Murphy had the "power of attorney to act on [his] behalf."

DISCUSSION

*Requested Instructions on Mistake of Fact and Mistake of Law*

Lind contends that the trial court erred by refusing his requested instructions on mistake of fact and mistake of law. He asserts that his "only defense" was "that [he] and Murphy were acting at all times under a sincere belief that the documents they prepared and offered were lawful and proper."

"A criminal defendant has the right to instructions that pinpoint the theory of the defense case. [Citation.]" (*People v. Gurule* (2002) 28 Cal.4th 557, 660.) A proposed instruction need not be given, however, "if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.) We review de novo the trial court's refusal to give a requested defense instruction. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) In doing so, "'"we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

A mistake of fact occurs when a person understands the facts to be other than they are, whereas a mistake of law occurs when a person knows the facts but has a mistaken belief as to their legal consequences. (*People v. LaMarr* (1942) 20 Cal.2d 705, 710.) Ordinarily, "ignorance of a law is not a defense to a charge of its violation" (*Hale v. Morgan* (1978) 22 Cal.3d 388, 396), and a factual mistake must be objectively reasonable to negate general criminal intent. (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1250.) Even a mistake of law or an objectively unreasonable mistake of fact may provide a defense, however, if it negates a required specific intent or mental state. (See *People v. Givan* (2015) 233 Cal.App.4th 335, 350; *People v. Meneses* (2008) 165 Cal.App.4th 1648, 1662.) In both cases, "an accused is only entitled to such an instruction if the evidence supports a reasonable inference that any such claimed belief

6

was held in good faith.  [Citation.]"[4]  (*People v. Vineberg* (1981) 125 Cal.App.3d 127, 137.)  "In the absence of some evidence from which it can be inferred that [a defendant's] alleged belief in the lawfulness of [his] conduct was in good faith, [a] court [is] under no duty to instruct the jury that a good faith mistake of law constitute[s] a defense to the action."  (*Id.* at p. 138.)

Lind and Murphy did not testify at trial and presented no evidence in their defense.  While this was their right, a consequence was that Lind relied on the prosecution for evidence to support his defense theory.  The prosecution presented no evidence from which the jury could have inferred that he was acting in a good faith belief that his actions were legal.  In fact, there was considerable evidence to the contrary.

Lind's "claim" for damages speaks for itself.  Even accepting that Lind truly believed he was being tried for witness intimidation unjustly, no reasonable person in his position would believe that a claim against Judge Kuns for $77 million in damages was legitimate.  Although the ultimate question is what Lind subjectively believed rather than what is objectively reasonable, without any evidence to explain why he would believe something so outrageous, the jury could only conclude that he was insincere.  This inference was bolstered by Lind's disregard of the repeated warnings from employees at the recorder's office that he should not record an interest in a property he did not own and that if he attempted to do so they would contact the district attorney.  (See *People v. Stewart* (1976) 16 Cal.3d 133, 140 ["[T]he circumstances in a particular case might indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith"].)  There was also direct evidence of Lind's insincerity.  In an email to an acquaintance, he admitted that he attempted to record the NIPI "only as leverage for [Judge Kuns] to dismiss my case."

---

[4] Because Lind's claim of error turns on whether there is evidence of his good faith, we agree with him that "[t]his court does not need to settle the technical issue of whether [his alleged lack of knowledge and criminal intent was] caused by mistakes of fact or mistakes of law."

Lind asserts there was evidence of "his reliance on a website [presumably, the NSEA website] relied on by many others." In fact, on the day of the offenses, Murphy told Ready that the NSEA did not even have a website. And to the extent there was an NSEA website, the evidence shows that it belonged to Lind and Murphy and that they created the NSEA forms. There is no evidence that anyone other than Lind and Murphy used these forms. Because there was no evidence to support Lind's mistake of fact and mistake of law defenses, the trial court did not err by refusing pinpoint instructions.

We agree with Lind that since each of the charged offenses required a specific intent or mental state, the trial court erred by instructing the jury that "[i]t is not a defense . . . that the defendants did not know they were breaking the law or they believed their acts were lawful." (See *People v. Goodin* (1902) 136 Cal. 455; CALCRIM No. 3407, Bench Notes ["The court should . . . exercise caution with specific intent crimes. A mistaken belief about legal status or rights may be a defense to a specific intent crime if the mistake is held in good faith"].) The error was harmless beyond a reasonable doubt, however, given the complete lack of evidence to support Lind's defense theory.

The error was also harmless because the trial court properly instructed on each of the elements involving a specific intent or mental state. The trial court instructed that Lind was guilty of offering a false document for recording only if "he knew that the document was false." This instruction was referenced in the conspiracy instruction regarding Lind and Murphy's intent to commit the target offense. The perjury instruction similarly required the jury to find that Lind knew his sworn statement—"the information contained in this [NIPI] is true"—was false. Under each of these instructions, Lind could not have been convicted if he mistakenly believed that his interest in Judge Kuns's property, and thus the NIPI, were valid. Accordingly, the trial court's instruction was not prejudicial. (See *People v. Garcia* (2001) 25 Cal.4th 744, 754-55 [instructing "'ignorance of the law is no excuse'" for crime requiring actual knowledge was harmless error]; cf. *People v. Braslaw*, *supra*, 233 Cal.App.4th at p. 1246 [knowledge requirement in instruction on elements of substantive offense "served the same purpose" as separate

8

instruction on mistake of fact because knowing something is untrue precludes a mistaken belief that it is true].)

*Sua Sponte Instruction on Lesser Included Offenses*

Lind contends that the trial court erred by not instructing sua sponte on attempted offering a false instrument for recording and attempted perjury as lesser included offenses. "Although a defendant has a constitutional right to have a jury determine every material issue presented by the evidence and the failure to so instruct is error, a trial court is not required to instruct the jury as to all lesser included offenses, only those that 'find substantial support in the evidence.' [Citation.] In this context, substantial evidence is evidence from which reasonable jurors could conclude '"that the lesser offense, but not the greater, was committed."' [Citation.]" (*People v. Medina* (2007) 41 Cal.4th 685, 700.)

Lind's argument rests upon his theory that completion of the offenses was factually or legally impossible because "the authorities were never going to accept the document for recording." The offenses were complete, however, as soon as he offered the NIPI for recording. (*People v. Garfield* (1985) 40 Cal.3d 192, 195 [section 115 violation "was complete at the moment defendant offered the [document for recording] with knowledge of its falsity"]; *Collins v. Superior Court* (2001) 89 Cal.App.4th 1244, 1247 [perjury complete at "the time when [the false sworn statement] is delivered by the accused to any other person, with the intent that it be uttered or published as true"].) The likelihood that it would be recorded is irrelevant.

In his reply brief, Lind focuses on section 115's third element that the "instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States."[5] (§ 115, subd. (a).) He argues that this "was factually or legally impossible" because "the document could not be recorded as it was prepared in the name of someone other than the owner of the property." Lind misconstrues this element, which

---

[5] Given that Lind did not raise this argument in his opening brief and claimed that only the other two elements were "'significant,'" his charge that "[r]espondent ignores [this] language" is unjustified.

9

"simply seeks to cover as coming within [the statute's] terms the various *classes* of instruments entitled, under our law, to be recorded, such as deeds, mortgages, etc., without any regard whatever whether the particular instrument is defective in form or certification." (*People v. Webber* (1919) 44 Cal.App. 120, 129-130 [per curiam opinion of the Supreme Court denying hearing].)

A NIPI is a recordable instrument. (Civ. Code, § 880.310.) Whether Lind's particular NIPI met all of the statutory recording requirements does not bear on the possibility of his completing the offenses. Consequently, the trial court had no obligation to instruct on attempted offenses. We reject Lind's challenge to the sufficiency of the evidence because it also is predicated on the impossibility of his completing the offenses.

*Prosecutorial Misconduct*

Lind asserts that the prosecutor, "under the guise of motive, repeatedly informed the jurors that the defendants" were "bullies" who "threatened, harassed, and intimidated Judge Kuns." In particular, Lind objects to the prosecutor's statement that they engaged in "paper terrorism." He contends that these remarks in the prosecutor's opening statement and closing argument amounted to "misconduct . . . so egregious as to constitute a violation of due process; . . . so deceptive and reprehensible as to violate state standards, and resulted in an inflamed jury who decided the case not on the facts, but on emotion and negative feelings about the defendants." We disagree.

"A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence. [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) The prosecutor's comments here were appropriate and did not constitute error, let alone misconduct. The evidence supports the prosecutor's characterization that Lind and Murphy threatened, harassed, and intimidated Judge Kuns. They referred to their attempt to coerce Judge Kuns into dismissing Lind's case as an "attack" that would "take out the enemy." (Capitalization omitted.) Lind told Judge Kuns his "demand" that she dismiss the charges against him and suggested she would be charged with treason if she

10

did not. Judge Kuns felt "not very good" when she received Lind's claim packet at her home. As a result of Lind's actions, she had to recuse herself from the witness intimidation case.

The prosecutor's reference to Lind's tactics as "paper terrorism" during closing argument would not have been out of line but for the trial court's prior order not to use that term. The prosecutor pointed out the "irony" that Lind accused Judge Kuns of environmental terrorism when he and Murphy committed "maybe not the traditional type of terrorism, maybe you call it document terrorism or paper terrorism." The trial court sustained Lind's objection to this comment but later—correctly, in our view— acknowledged that it "should not have sustained [Lind's] objection" because the statement was "fair comment on the evidence," particularly given the context. There was no prejudice from the prosecutor's statement. Lind's failure to request a curative admonition forfeits any claim to the contrary. (See *People v. Lopez* (2013) 56 Cal.4th 1028, 1073.)

Lind asserts that "proof of motive was not necessary to a conviction" and "doubt[s] whether all of the motive testimony . . . should have been admitted." Lind "vigorously contested" the evidence of his mental state, however, arguing that he mistakenly believed he had a valid claim to Judge Kuns's property. This put his motive in issue. The prosecution's motive evidence was necessary to rebut Lind's mistake defense. (See *People v. Enos* (1973) 34 Cal.App.3d 25, 35 ["[I]n view of the [mistake] defense offered by defendant, evidence . . . relevant to show criminal intent [and] motive . . . was admissible"].) As the trial court properly instructed, "[h]aving a motive may be a factor tending to show that the defendant is guilty." The trial court did not abuse its discretion in admitting the motive evidence.

### *Cumulative Error*

Lind asserts that cumulative error warrants reversal. As we have identified only one error, which was harmless, there is no error to cumulate.

11

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

12

Jean M. Dandona, Judge

Superior Court County of Santa Barbara

_____


Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Jonathan J. Kline and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.