Filed 4/29/16  P. v. Cooks CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B256577 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA369808) |
| v. | |
| CHARLES REGINALD COOKS, | |
| Defendant and Appellant. | |
| In re | B263093 & B264307 |
| CHARLES REGINALD COOKS, | |
| on | |
| Habeas Corpus. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Convictions affirmed.  Remanded for resentencing.  Habeas corpus petitions denied.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Charles Reginald Cooks, in pro. per., for Defendant and Appellant on Habeas Corpus.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Following his conviction of sexually assaulting two women in separate incidents, defendant and appellant Charles Reginald Cooks has filed an appeal, in which he is represented by appointed counsel, raising contentions of insufficient evidence and instructional, evidentiary and sentencing error. Cooks has also filed two pro se habeas corpus petitions raising a variety of other issues.

For the reasons discussed below, Cooks's convictions are affirmed, but his sentence is vacated and the matter is remanded to the trial court for resentencing. Cooks's habeas corpus petitions are denied.

## BACKGROUND

At Cooks's trial, three women testified they had been sexually assaulted by Cooks in three separate incidents. The women were M.T., Luisa R., and R.L. Cooks was convicted for his assaults on M.T. and Luisa. Cooks's assault on R.L. was admitted as evidence of prior, uncharged acts tending to prove that Cooks was guilty of having assaulted M.T. and Luisa.

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

a. *The assault on R.L.*

R.L. testified that on the night of September 25, 2004, when she was 14 years old, she was waiting for a bus when Cooks drove up and offered her a ride. R.L. accepted. She told him where she lived and, after driving for a while, Cooks said he knew a shortcut.

R.L. testified Cooks then suddenly parked the car, pulled out a gun, pointed it at her side, told her to pull her underpants down and said: " 'Show me the pussy.' " R.L.

2

testified she "start[ed] crying and telling him, no, I'm Christian, I'm still a virgin. I asked him like, 'What if you had a daughter, how would this make you feel?' [¶] He told me to shut up, he don't have a daughter so he don't care. And I kept crying. [¶] He told me to shut up . . . before he takes me to his house for three days." Cooks then ordered R.L. to suck his penis. After that, he put on a condom and raped her. Then he took the condom off and raped her again.

Cooks then began driving again, but R.L. was afraid that he was taking her to his house so she jumped out of the car at a red light. Cooks drove off. R.L. ran into a boy she knew from school; his mother called the police and R.L.'s mother. Initially interviewed by the police in front of her mother, R.L. lied by saying she had been abducted from the bus stop. She did this because she did not want her mother to know that she had accepted a ride from a stranger. At a hospital, a nurse took oral and vaginal swabs from R.L.

In 2010, the police contacted R.L. and asked if she could identify her attacker from a photo array. R.L. testified she believed that she had accurately picked out Cooks's picture.

b. *The assault on M.T.*

M.T. testified that on the afternoon of January 29, 2006, she was waiting at a bus stop when Cooks drove up and offered her a ride. M.T. told him she was going home. Cooks said he would take her, but that he had to stop at a friend's house first. They stopped at someone's house for a few minutes while Cooks went inside. When he returned and resumed driving, M.T. realized that he was not driving toward her house. She tried to open the car door and jump out, but Cooks had locked it from his side.

Cooks drove to a wooded area, pulled out a gun, pressed it to M.T.'s head and told her to disrobe. M.T. took her pants off. Cooks ordered her to perform oral sex on him, which she did. Cooks then put on a condom and raped her. Afterward, he took off the condom and rubbed his penis around M.T.'s face. Then he put his penis into her mouth and ejaculated.

3

M.T. testified Cooks drove to another location and stopped: "He told me to get the fuck out of his car, and that I should be glad that I'm walking out instead of him carrying me out." M.T. began walking and then flagged down a police car. She was taken to a clinic where rape kit samples were collected, including vaginal, oral and facial swabs.

On May 24, 2010, M.T. was shown a photo array by the police in which she identified Cooks's picture.

c. *The assault on Luisa R.*

Luisa R. testified that at 1:30 a.m. on April 3, 2010, she left her parents' house to go visit her partner, Evelyn, who lived in Hollywood. Luisa had to sneak out of the house to meet Evelyn because her parents would not have given her permission to leave.

A friend dropped Luisa off at a bus stop where she intended to catch a bus for Hollywood. But after waiting 20 minutes, Luisa decided to hitchhike. Cooks, who was driving a van, stopped and picked her up. Luisa told him she was going to Hollywood. Cooks said he was going that way but he had to make a stop first. When Cooks said he knew someone who sold alcohol after 2:00 a.m., Luisa told him that if he bought alcohol for her and Evelyn, she would pay for it.

Cooks then made a series of turns and parked the van. He told Luisa that when he first saw her hitchhiking he had put on a condom and then offered her the ride. He tried to disrobe her, but she pushed him away. Cooks said he would not penetrate her, that he just wanted to get an erection. After Luisa refused to take her pants off, Cooks got on top of her and pulled her pants down while she tried to fight him off. Luisa testified she is 5 feet 1 or 2 inches tall and, at the time this happened, she weighed 110 pounds. When Cooks testified, he described himself as 5 feet 9 inches tall, and said that in 2010 he weighed about 200 pounds. Luisa testified that although Cooks's penis was never erect, he penetrated her vagina three times.

After being raped, Luisa managed to get hold of her cell phone. She pressed the call button just to redial the last number she had called. She was holding the phone behind her back so Cooks could not see what she was doing. When the call was

4

answered, Luisa screamed that she was being raped. Cooks told her to shut up, and then he grabbed her phone and threw it into the back of the van. He told Luisa to stay off the phone. Then he picked her up in order to continue raping her, but Luisa fought with him, pushed him away and reached for her phone because it had started ringing. It was Evelyn calling back. Luisa told Evelyn she was being raped. Cooks again grabbed the phone away from Luisa. Meanwhile, Evelyn called 9-1-1.

Cooks was still on top of Luisa, and she was trying to fight him off. She punched him in the face at least three times. Cooks punched her back all over her head. He told her "that [she] wasn't going to get out of it." Then, bleeding from Luisa's punches, Cooks sat back in the driver's seat and announced that he had a gun. Luisa told him she did not care if he did, she was leaving. She got out of the van. As Cooks was driving away, she memorized his license plate number. Luisa testified she never saw a gun.

Luisa ran to a gas station, called 9-1-1, and gave the operator Cooks's license number. She also called Evelyn. When the police arrived, one officer asked Luisa if she was a prostitute, which she denied. The officer asked if she needed an ambulance, which she declined. Luisa testified she felt the officer was being disrespectful. When Evelyn showed up a short while later, Luisa said she needed medical attention. They went to a hospital where a doctor determined that Luisa had sustained a concussion. Then the police transported Luisa to a clinic where rape kit swabs were taken.

Luisa testified that she never agreed to have consensual sex with Cooks.

Evelyn testified she had known Luisa for 16 years and that they were dating at the time of this incident. When Luisa did not show up in Hollywood that night, Evelyn started calling Luisa's cell phone: "[A]t first she wasn't picking up. I thought maybe her phone died or something or she had it on silence to save the battery. [¶] That's when she called me back and that's when I heard her screaming. [¶] Q. And when you said you heard her screaming, what could you hear? [¶] A. I heard her saying, 'Baby, Baby, call the cops, call the cops. I'm being raped right now. Call the cops.' " When Evelyn later met up with Luisa she "looked traumatized. She was crying. I'd never seen her so

5

afraid. . . . She was shaking. When I saw her, I just ran to her and I hugged her. She just broke down in my arms."

        d. *The DNA evidence.*

Forensic analysis determined that DNA recovered from M.T.'s facial swab matched Cooks's DNA profile; the odds that any other unrelated individual in the population would have matching DNA was one in 120 billion. Forensic analysis determined that DNA recovered from R.L.'s vaginal swab matched Cooks; the odds that any other unrelated individual in the population would have matching DNA was one in 17 quadrillion. Forensic analysis determined that DNA recovered from Luisa's vaginal swab matched Cooks; the odds that any other unrelated individual in the population would have matching DNA was one in 1.8 quadrillion.

    2. *Defense evidence.*

Cooks represented himself at trial. He presented his own testimony in a narrative fashion and put on testimony from a forensic DNA expert and from Jose Campos, the police officer who spoke to Luisa at the gas station after she called 9-1-1.

        a. *Cooks's testimony.*

Cooks testified he had been working as a longshoreman in April 2010 and that April 2 was payday. At 1:45 a.m. on April 3, he left home "on [his] way to after hours [*sic*]." Luisa flagged him down at a bus stop and got into his van. After he started driving, she asked if he knew any place to get alcohol. He told her it was too late at night. They "discussed a date." Cooks parked the van, got a condom from his glove compartment and put it on.

Cooks testified Luisa "pulled her pants down," but then he could not get an erection: "And . . . that became a problem. [¶] And so . . . she told me to hurry up. And then she offered . . . to give me a hand job. [¶] And she grew more impatient. And I never was actually able to reach any type of erection. [¶] And so I told her that I wasn't going to pay her. Because we didn't . . . do anything. Meaning that we never engaged in any sexual activity so, you know, why should I pay. [¶] And, so, Luisa got angry and she punched me in the nose three times."

Cooks testified he tried to punch Luisa back, but she blocked his punch and grabbed his arms.  At that point, Cooks ordered her out of his van.  When Luisa threatened to call the police if he did not pay, Cooks told her he did not care.  Cooks thought Luisa was calling 9-1-1, but – when he discovered that she was talking to Evelyn – he kicked her out of the van.  Luisa left her cell phone, car keys and driver's license in his van.  He never returned those items.

On cross-examination, Cooks testified that Luisa had agreed to have sex with him for money.  He testified that although his penis had been "somewhere in the area of [Luisa's] vagina," he never had an erection, "[h]er pants were never completely taken off," and he "[a]bsolutely did not go inside her vagina."  In fact, his penis did not even touch the outside of Luisa's vagina.

Asked if his penis had ever touched M.T.'s face, Cooks testified that the first time in his entire life he saw M.T. was at the preliminary hearing.  Cooks similarly testified that he had never seen R.L. before she testified at trial.

b. *Other defense evidence.*

Marc Taylor, a forensic DNA expert, testified that his laboratory received swab samples relating to Luisa and M.T.  Taylor's laboratory found no sperm cells on M.T.'s oral swab.  The parties stipulated that analysis of M.T.'s vaginal swab eliminated Cooks as a possible DNA donor.  Taylor's laboratory had only been asked to analyze M.T.'s oral and vaginal swabs; he was not asked any questions about DNA results relating to M.T.'s facial swab.

Officer Campos testified that, after interviewing Luisa, he concluded that what had happened was not a sexual assault, but rather "a grand theft and a battery."  Luisa did not tell him that she had been raped, but only that Cooks tried "to kiss her or something to that effect," and that when Luisa told Cooks to stop he punched her in the face.  She told Campos that her cell phone had dropped out of her pants and Cooks drove off with it.  Luisa admitted she had been drunk.  Campos thought it was possible Luisa might be a prostitute.

3. *Trial outcome*.

As to Luisa, Cooks was convicted of three counts of rape (counts 1-3) and one count of assault with intent to commit rape (count 4). (§§ 261, subd. (a)(2), 220, subd. (a)).[1] As to M.T., Cooks was convicted of forcible oral copulation (count 8) and rape (count 9). (Pen. Code, §§ 288a, subd. (c)(2), 261, subd. (a)(2).) The jury found that the One Strike sentencing scheme (§ 667.61) was applicable to counts 1 through 3 and counts 8 and 9, and that in violation of section 12022.53, subdivision (b), Cooks had used a firearm in the commission of counts 8 and 9. Cooks was sentenced to a prison term of 60 years to life, consisting of 25 years to life for count 1, a consecutive 25 years to life for count 8, and a consecutive 10 years for the count 8 firearm enhancement. In addition, Cooks was sentenced to the following concurrent prison terms: 15 years to life on count 2; 15 years to life on count 3; six years on count 4; and 25 years to life on count 9.

## CONTENTIONS

On appeal (in which he is represented by appointed counsel), Cooks contends: (1) the trial court erred by admitting evidence of the uncharged sexual assault against R.L.; (2) the trial court erred by failing to instruct the jury on several lesser included offenses to the Luisa assault; (3) the trial court erred by failing to instruct on false imprisonment in connection with the One Strike sentences (§ 667.61); (4) the trial court erred by convicting him for both rape and assault with intent to commit rape in connection with the assault against Luisa; and (5) the trial court's 25-years-to-life One Strike sentence on count 8 was erroneous.

Cooks raises various other claims in his accompanying pro se habeas corpus petitions.

## DISCUSSION

1. *Evidence of the uncharged sexual assault on R.L. was properly admitted.*

Cooks contends the trial court erred by admitting the evidence of his assault on R.L. There is no merit to this claim.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

8

a. *Legal principles.*

"Subdivision (a) of [Evidence Coe] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393, fn. omitted.) Subdivision (b) allows admission of evidence of a person's uncharged misconduct "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

Evidence Code section 1108 allows such disposition evidence "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911.) "In a case in which a defendant is accused of a sexual offense, Evidence Code section 1108 authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352."[2] (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.) Section 1108 permits " ' "consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' [Citation.]" (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.) "[T]he clear purpose of section 1108 is to permit the jury's consideration of evidence of a defendant's

---

[2]    Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

9

propensity to commit sexual offenses." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1164.)

"A trial court's ruling admitting evidence of other crimes is reviewable for abuse of discretion." (*People v. Hayes* (1990) 52 Cal.3d 577, 617.) Under Evidence Code section 1108, " '[t]he principal factor affecting the probative value of an uncharged act is its similarity to the charged offense. Other factors affecting the probative value include the extent to which the source of the evidence is independent of the charged offense, and the amount of time between the uncharged acts and the charged offense. The factors affecting the prejudicial effect of uncharged acts include whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses.' [Citation.] 'The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules.' [Citation.] [¶] We will only disturb the trial court's exercise of discretion under Evidence Code section 352 'when the prejudicial effect of the evidence clearly outweighed its probative value.' [Citation.]" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.)

b. *Discussion*.

Cooks argues R.L.'s testimony should have been excluded under Evidence Code section 352 because it was highly inflammatory and there was a danger the jury would use the current prosecution to punish him for having assaulted R.L. We are not persuaded.

R.L.'s sexual assault furnished extremely probative evidence regarding a crucial credibility issue: were Cooks's sexual acts with Luisa consensual, as he claimed? Cooks testified Luisa consented to have sex with him for money, and that a dispute arose only after Cooks refused to pay because he could not get an erection. Cooks put Officer Campos on the stand to testify that he, the officer, believed Luisa might be a prostitute. Luisa, on the other hand, testified that after Cooks picked her up hitchhiking he forced himself on her. Hence, "[e]vidence of the uncharged sexual assault committed by

10

[Cooks] was vital to the jury's effort to evaluate the credibility of [Luisa] and determine if her account of a forcible sexual assault was accurate. [Citations.]" (*People v. Hollie*, *supra*, 180 Cal.App.4th at pp. 1275-1276.) In addition, evidence of R.L.'s assault corroborated M.T.'s testimony that Cooks sexually assaulted her, contrary to Cooks's testimony that he had never seen her before.

The uncharged misconduct bore significant similarities to the charged offenses. All three women were offered rides by Cooks while they were waiting at bus stops. In each instance, Cooks promised to take them where they wanted to go, but then drove to a different location where he parked and then proceeded to assault them inside his vehicle. Cooks pointed a gun at both M.T. and R.L. Cooks threatened Luisa with a gun but he never showed it to her. The probative value of this other crimes evidence "is increased by . . . the independent sources of the evidence (the victims) in each offense. [Citation.]" (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 917.)

Notwithstanding the significant probative value of the Evidence Code section 1108 other crimes evidence demonstrating he had a propensity to commit sexual assault, Cooks argues the evidence should have been excluded because it was inflammatory and gave rise to the danger of the jury punishing him for having assaulted R.L. As discussed below, we are not persuaded by either argument.

(1) *The propensity evidence was not overly inflammatory.*

Cooks argues R.L.'s testimony was inflammatory because it described an assault that was much more horrific than the charged assaults.

Citing *People v. Harris* (1998) 60 Cal.App.4th 727, 737-738 (*Harris*), Cooks argues: "Hearing that appellant sexually assaulted a 14 year old virgin who begged for mercy while threatening her with a firearm would likely inflame the passions of the jury. [¶] Neither of the two other complaining witnesses, Luisa R. or [M.T.], were minors and neither claimed to be 'Christian' or virgins. Moreover, while appellant told Luisa he had a gun, it was never produced. All told, the R.L. evidence was 'inflammatory in the extreme' and 'weigh[ed] sharply in favor of exclusion.' " We disagree.

11

In *Harris*, there was a gross disparity between the essential qualities of the charged and uncharged acts. The uncharged offense – a particularly violent and vicious sexual assault – was extremely inflammatory compared to the charges Harris faced: sexual assaults involving only non-violent breaches of trust with acquaintances.[3] Here, on the other hand, both the charged and the uncharged offenses involved violent sexual assaults of women who were complete strangers to Cooks. Cooks did not show a gun to Luisa, but he did threaten her with it, and he certainly showed a gun to M.T. Indeed, by pressing his gun against M.T.'s head he committed an act even more inflammatory than what he did to R.L., which was pointing a gun at her side.[4]

(2) *Danger of misplaced surrogate punishment*.

Cooks argues: "Apparently, appellant was charged with the R.L. incident, she failed to appear at the preliminary hearing, and the charges were dropped. In such case, it is quite possible the jury consciously, or unconsciously, found appellant guilty out of a desire to punish him for his prior acts."

Cooks's jurors were instructed with both CALCRIM No. 375 and 1191, which clearly restricted their use of the Evidence Code section 1108 evidence to the charges

---

[3]    As *Harris* explained: "The trial court found the evidence was 'inflammatory.' We agree, but clarify that the evidence was inflammatory *in the extreme*. Without minimizing the trauma suffered by each victim, at worst defendant licked and fondled an incapacitated woman and a former sexual partner, both of whom were thereafter on speaking terms with him. Although the assaults described by Tracy and Brenda are criminal, involving a breach of trust by a caregiver, the abuse the victims suffered is, unfortunately, not unusual or shocking. On the other hand, the evidence of the 1972 incident described a viciously beaten and bloody victim who as far as the jury knew was a stranger to the defendant." (*People v. Harris, supra,* 60 Cal.App.4th at p. 738.)

[4]    Cooks also complains that R.L. turned out to be an aggressively hostile witness when he cross-examined her. He has not, however, cited any case law demonstrating that the trial court's handling of R.L.'s conduct on the witness stand denied him a fair trial. Here, Cooks did not move to strike R.L.'s testimony, nor did he move for a mistrial. (See generally, 5 Witkin, Cal. Crim. Law (4th ed. 2012) Crim. Trial, § 647, p. 1001.) This case illustrates the principle that self-representation "usually increases the likelihood of a trial outcome unfavorable to the defendant." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8.)

being currently prosecuted. CALCRIM No. 375 instructed they could consider the evidence that Cooks had committed other offenses not charged in this case "for the limited purpose of deciding whether or not . . . [Cooks] was the person who committed the offenses alleged *in this case*," or that Cooks "acted with the intent to engage in forcible sexual conduct *in this case*," or that Cooks "had a motive to commit the offenses alleged *in this case*." (Italics added.) CALCRIM No. 1191 instructed that the evidence showing Cooks had committed acts of rape and forcible oral copulation against R.L. could be used to conclude that he was "likely to commit forcible rape, forcible oral copulation, and assault with the intent to commit a felony, *as charged here*. [¶] . . . [¶] *Do not consider this evidence for any other purpose*." (Italics added.) The given instructions duly advised the jury of the limited use they could make of the evidence relating to R.L.

(3) *Conclusion*.

"We will only disturb the trial court's exercise of discretion under Evidence Code section 352 'when the prejudicial effect of the evidence clearly outweighed its probative value.' [Citation.] A trial court abuses its discretion when its ruling 'falls outside the bounds of reason.' [Citation.]" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.) We are satisfied that the trial court's ruling here must be affirmed. "We find nothing arbitrary, capricious, or patently absurd in the trial court's ruling that evidence of [Cooks's] prior offense was admissible to prove his propensity to commit the charged sexual offense[s]." (*People v. Lewis*, *supra*, 46 Cal.4th at p. 1286.)

2. *Instructions on assault, battery and attempted rape were not required as lesser included offenses.*

With respect to the counts relating to victim Luisa, Cooks contends the trial court erred by failing to instruct, sua sponte, on simple assault and battery as lesser included offenses to the crimes charged in counts 1, 2, 3 and 4, and on attempted rape as a lesser included offense to the crimes charged in counts 1, 2 and 3. We disagree.

13

a. *Legal principles.*

"When there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of a lesser included offense, the court must instruct upon the lesser included offense, and must allow the jury to return the lesser conviction, even if not requested to do so." (*People v. Webster* (1991) 54 Cal.3d 411, 443.) "An offense is necessarily included within a charged offense 'if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.' [Citation.]" (*People v. Toro* (1989) 47 Cal.3d 966, 972, disapproved on other grounds by *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.)

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).) "[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed. [Citations.] [¶] In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Ibid.*)

"[O]n appeal we employ a de novo standard of review and independently determine whether an instruction on the lesser included offense . . . should have been given." (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

b. *Discussion*.

Citing the statutory definition test (*People v. Toro*, *supra*, 47 Cal.3d at p. 972), Cooks contends the trial court should have instructed on assault, battery and attempted

14

rape in connection with the alleged crimes committed against Luisa. We are not persuaded.

### (1) *Assault and battery instructions were not required.*

Relying on irrelevant[5] and inconsequential peripheral details (e.g., that Luisa and Cooks agreed she had voluntarily entered his van and discussed buying alcohol), Cooks argues that because their stories were not fatally inconsistent with his narrative, the jury needed to be instructed on a possible "middle-ground" verdict of assault and battery. In fact, however, their stories were entirely contradictory on all crucial points. Luisa testified Cooks told her that he was going to give her a ride to Hollywood, but then he stopped on a side street and committed a sexual assault during which he punched her in the head and threatened her with a gun. In stark contrast, Cook's story was that he initially agreed to pay her for sex, but then refused because he could not become erect, at which point she became violent.

Hence, as to whether or not Cooks was guilty of having sexually assaulted Luisa as charged in counts 1, 2 and 3, there was no substantial "middle ground" evidence the jury could have relied on to find that Cooks was guilty of mere assault and battery: R.L. testified Cooks sexually assaulted her, but Cooks testified they had been engaged in an entirely consensual act of prostitution. This state of the evidence did not warrant instructions on lesser included offenses under *Breverman*.

As to count 4, although there was arguably a simple assault and battery involved— because Luisa testified that after she punched Cooks he punched her back, whereas Cooks testified he tried to punch her back but she blocked his effort—Cooks could not

---

[5]     For example, Cooks asserts, "The DNA evidence does seem to indicate that appellant's penis may have entered Luisa's vagina, which would be consistent with her testimony. However, Luisa also testified that appellant never became erect and that when she saw his penis, he was wearing a condom. This was consistent with appellant's testimony." But these assertions do nothing to contradict Luisa's testimony that Cooks tried to have forcible sexual intercourse with her and, in doing so, at least slightly penetrated her vagina. (See § 263 ["The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. Any sexual penetration, however slight, is sufficient to complete the crime."].)

15

have been prejudiced by the lack of a lesser included offense instruction. By finding Cooks guilty on counts 1 through 3, the jury necessarily determined that his prostitution story was a lie, and therefore would have concluded Luisa was trying to prevent Cooks from raping her a fourth time. (See *People v. Rogers* (2006) 39 Cal.4th 826, 867-868, fn. omitted ["The erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, [836-837] . . . . Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of."].) We do not find it is reasonably probable the jury would have returned a different verdict had the court instructed on assault and battery.

(2) *Attempted rape instruction was not required.*

To the extent Cooks is merely asserting that there was an evidentiary dispute as to whether or not he penetrated Luisa's vagina – and thereby committed rape – his problem is that attempted rape is not a lesser included offense of rape. "Rape is a general intent crime. [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 685.) Section 21a provides: "An *attempt* to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (Italics added.) Because attempting to commit rape has this additional specific intent element, it is not a lesser included offense of the crime of rape. "[W]hile it might seem an attempt would naturally be a lesser included offense, this is not necessarily so. Attempts are only lesser included offenses if the sole distinction between the attempt and the completed offense is completion of the act constituting the crime. [Citation.] If the attempt requires a heightened mental state, as is the case with attempts of many general intent crimes, the attempt requires proof of an additional element and is therefore not a lesser included offense. [Citations.]" (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1248 [attempted rape of intoxicated person is not lesser included offense of rape of intoxicated person].) Similarly, *People v. Mendoza* (2015) 240 Cal.App.4th 72, states: "Attempted sexual intercourse, attempted sodomy and attempted oral copulation with a child 10 years of age or younger are all specific intent crimes. (§ 21a.) Thus, under the elements test, they are

16

not lesser included offenses of the charged general intent crimes. [Citation.] Because of the different mental states required, a defendant could be guilty of the completed offense but not the attempt." (*Id.* at p. 83.) Thus, the trial court did not err by failing to instruct on attempted rape as a lesser included offense of the rapes charged in counts 1, 2 and 3.

        3. *Instruction on false imprisonment was not required.*

        Cooks contends that, as to counts 1 and 9, the trial court erred by failing, sua sponte, to instruct the jury on false imprisonment as a lesser included offense of kidnapping. There is no merit to Cooks's claim.

        While it is true that false imprisonment (§ 236) is a lesser included offense of kidnapping (§ 207), Cooks was not charged with kidnapping in this case. Rather, the kidnapping allegation was pled as an aggravating circumstance that triggered the application of the One Strike alternative sentencing statute. (§ 667.61.) A One Strike sentence is triggered when the defendant commits an enumerated sexual offense in certain aggravating circumstances that are set forth in the One Strike statute. Kidnapping is one of the One Strike triggering circumstances (see § 667.61, subd. (d)(2), (e)(1)). False imprisonment is not mentioned in the One Strike Statute.

        Cooks asserts that because Luisa and M.T. voluntarily got into his vehicle, his jury should have been given an alternative false imprisonment instruction because it "could have resulted in a guilty verdict on the lesser offense, and non-aggravating factor in section 667.61, of false imprisonment." This claim is predicated on a fundamental misunderstanding of the One Strike statute.

        Section 667.61 is not a substantive offense or an enhancement; it is an alternative sentencing scheme that comes into play only if certain triggering circumstances are pled and proved. "[T]he One Strike law does not establish an enhancement, but 'sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes' when a defendant commits one of those crimes under specified circumstances. [Citations.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 118-119.) Section 667.61 refers only to kidnapping, not false imprisonment. (See § 667.61, subds. (d) & (e).) Cooks has cited no authority that the trial court was required to give an instruction letting the jury find false

17

imprisonment as an alternative aggravating factor which is not enumerated in the statute. Accordingly, there was no error in failing to instruct as to false imprisonment.

4. *Cooks was properly convicted of assault with intent to commit rape (count 4).*

Cooks contends that as to Luisa he was improperly convicted of both rape and assault with intent to commit rape because the latter is a lesser included offense of the former and both were based on his commission of the same act. We are not persuaded.

Multiple convictions may not be based on necessarily included offenses. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) "In most cases 'this court has . . . affirmed multiple convictions for a single act or indivisible course of conduct,' leaving it to the sentencing court to determine whether to stay execution of sentence on one or more convictions pursuant to section 654 in order to avoid multiple punishment for the same act. [Citation.] A defendant, however, cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act. [Citation.]" (*People v. Sanchez* (2001) 24 Cal.4th 983, 987, disapproved on other grounds by *People v. Reed* (2006) 38 Cal.4th 1224, 1228.)

Cooks is correct that assault with intent to commit rape is a lesser included offense of rape. "Every act of rape, of course, necessarily includes an assault." (*In re Jose M.* (1994) 21 Cal.App.4th 1470, 1477.) However, the rule he cites is that "[a] defendant . . . cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission *of the identical act*. [Citation.]" (*People v. Sanchez*, *supra*, 24 Cal.4th at p. 987, italics added.) The People correctly point out that Cooks's sexual assault on Luisa took place in two stages. During his initial attack, Cooks raped Luisa three times while she was trying to fight him off. Thereafter, Luisa managed to grab her cell phone and make the distress call to Evelyn. Cooks then grabbed the phone from Luisa, threw it into the back seat of the van, told her to stay off the phone, and then continued his sexual assault.

As Luisa testified: after Cooks threw her phone into the back of the van, "He picked me up to continue raping me . . . and I pushed myself up even more and I was able

18

to reach to the back to grab my phone because it was ringing." When Luisa answered the phone, she realized it was Evelyn. She told Evelyn that she was being raped, after which Cooks took her phone away again. Luisa testified:

"Q. And after you were on the phone with Evelyn, was the defendant still on top of you at that point?

"A. Yes.

"Q. And what were you doing?

"A. I was trying to fight him off.

"Q. When you say trying to fight him off, what were you doing?

"A. I was literally trying to fight him off. I punched him.

"Q. Do you know where you punched him?

"A. I punched him on his face.

"Q. Did he strike you at all?

"A. He did, yes.

"Q. Where?

"A. All over my head. On the back part of my head, the side of my head, the front part of my head. I covered my face.

"Q. And when he was hitting you, was he saying anything?

"A. *He was telling me to just . . . let it be, that – that I wasn't going to get out of it.*" (Italics added.)

Hence, the evidence clearly showed that *after* having raped Luisa three times, Cooks tried to rape her again but he was stymied because she managed to fight him off. Cooks was not convicted of both rape and assault with intent to commit rape for the same act.

5. *Sentencing error on count 8 requires a remand for resentencing.*

Cooks contends the One Strike sentence imposed on his count 8 conviction for the forcible oral copulation of M.T. must be vacated because it was based on a triggering circumstance that was not charged in the information. The People concede the error, but contends it can be remedied without affecting Cooks's sentence because the information

19

also alleged two other triggering circumstances which could be substituted in order to impose the same 25-years-to-life sentence on count 8. However, as Cooks rightly notes, his overall sentence would be affected by this proposed remedy because a separately-imposed 10-year firearm use enhancement under section 12022.53 would have to be vacated. As a result, we shall remand the case to the trial court for resentencing.

"Section 667.61 requires the trial court to impose a life sentence when the defendant is convicted of an enumerated sexual offense and the People plead and prove one or more of the specified aggravating circumstances. [Citations.] When the People prove a single circumstance listed under section 667.61, subdivision (d) or at least 2 of the circumstances listed under subdivision (e), the term is 25 years to life; when only a single circumstance under subdivision (e) is proved, the term is 15 years to life. [Citation.] [¶] . . . A life sentence thus may be imposed for each current count to which an offense-related circumstance attaches, subject to the rules for consecutive sentencing set forth in section 667.61, subdivision (g)." (*People v. DeSimone* (1998) 62 Cal.App.4th 693, 696-697.)

Cooks's jury returned a verdict form for count 8 finding that, during his forcible oral copulation of M.T., he was guilty of aggravated kidnapping, a single circumstance listed in section 667.61, subdivision (d), which thereby triggered a One Strike sentence of 25 years to life. Cooks contends this finding was erroneous because the amended information does not contain a kidnapping allegation in connection with count 8, and therefore he was not given proper notice of the allegation. Cooks asserts that due to this error, his count 8 sentence should be reduced from 25 years to life to 15 years to life.

The People acknowledge this error, conceding that "our Supreme Court, interpreting section 667.61, subdivision (f), has held that where the information did not make a specific section 667.61 allegation, any later true finding must be stricken. This is especially true here, where there is no indication in the record if appellant ever had notice of the kidnapping allegation as to count 8 specifically before the jury read its verdict. (See *People v. Mancebo* (2002) 27 Cal.4th 735, 740-754.)" However, although conceding that Cooks "is correct that the kidnapping allegation finding as to count 8 must

be stricken," the People go on to assert that this will not affect his ultimate sentence because two other triggering circumstances under subdivision (e) of section 667.61 were properly pled and proved as to count 8—that Cooks used a firearm and that there were multiple victims. (§ 667.61, subds. (e)(3) & (e)(4).) "Consequently, [the People conclude,] even with the striking of the kidnapping allegation [Cooks's] sentence remains unchanged."

But, as Cooks properly points out in his reply brief, the People are mistaken. If the gun use circumstance were combined with the multiple victim circumstance to trigger a 25-years-to-life One Strike sentence under section 667.61, subdivision (a), then the gun use would not be available for imposition of a 10-year enhancement under section 12022.53, subdivision (b). That is because the "One Strike law provides that where, as here, 'only the minimum number of circumstances specified in subdivision (d) or (e) that are required for' an enhanced One Strike law sentence 'have been pled and proved, . . . those circumstances shall be used as the basis for imposing' the One Strike law sentence 'rather than being used to impose the punishment authorized under any other provision of law, unless [the other] provision . . . provides for a greater penalty. . . .' (§ 667.61, subd. (f); *Mancebo, supra,* 27 Cal.4th at pp. 738, 740 [use of gun enhancement not permitted when same allegation was necessary to support the 25-years-to-life One Strike law sentence]; *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 214-215 . . . [use of deadly weapon enhancement not permitted when allegation was necessary to support the 25-year-to-life One Strike law sentence].) Because the deadly weapon circumstance is necessary to support the One Strike law sentence, we vacate the . . . enhancement for use of a deadly weapon . . . ." (*People v. Perez* (2015) 240 Cal.App.4th 1218, 1224.)

Given this situation, we deem it appropriate to remand this matter so the trial court may consider restructuring Cooks's sentence. (See *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1256 ["the trial judge's original sentencing choices did not constrain him or her from imposing any sentence permitted under the applicable statutes and rules on remand, subject only to the limitation that the aggregate prison term could not be increased"]; *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614 [remand for

21

resentencing proper where original sentence contained unauthorized enhancement]; *People v. Stevens* (1988) 205 Cal.App.3d 1452, 1455-1458 [remand for resentencing proper where original sentence violated "double-the-base-term" rule].)

In sum, we shall vacate Cooks's sentence because of the sentencing error on count 8 and remand to the trial court for resentencing.

6. *Cooks's pro se habeas corpus petition claims are denied*.

In addition to the direct appeal filed by appointed counsel (B256577), Cooks has also filed two pro se habeas corpus petitions in this matter. We address those claims below.

a. *Habeas corpus petition B263093*.

In habeas corpus petition B263093, Cooks asserts that Judge Craig J. Mitchell, who presided over the trial, should be recused from taking any part in reviewing Cooks's direct appeal, apparently on the ground that he has named Judge Mitchell as a defendant in an unspecified civil lawsuit pending in federal court.[6] However, Judge Mitchell does not sit on the Court of Appeal and he has had no role whatsoever in our determination of Cooks's appellate and habeas claims.

Cooks's habeas corpus petition B263093 is therefore denied.

b. *Habeas corpus petition B264307*.

In habeas corpus petition B264307, Cooks makes a series of claims.

(1) *Sufficiency of the evidence claims*.

Cooks appears to claim there was insufficient evidence supporting his convictions for sexually assaulting M.T. because: she was shown a suggestive photo array; she gave police a physical description which did not accurately match Cooks; and, there was "DNA exoneration evidence excluding him from being a possible suspect." In connection with the assault on Luisa, Cooks asserts that because she testified he merely rubbed against her, and because there was evidence he did not have an erection, the jury

---

[6]    Cooks gives no detail about the nature of the federal lawsuit.

22

"should have only been allowed to consider" a charge of sexual battery under section 243.4.

However, "claims of the insufficiency of evidence to support a conviction are not cognizable in a habeas corpus proceeding. [Citation.]" (*In re Reno* (2012) 55 Cal.4th 428, 505.) In any event, although M.T.'s vaginal and oral DNA swabs were negative for Cooks's DNA, M.T.'s facial swab indisputably proved that he was the man who attacked her. Hence, any suggestiveness in a photo array shown to M.T. could not have mattered to the jury's verdict. As to the attack on Luisa, she testified that – erection or no erection – Cooks penetrated her vagina three times. Section 263 states that "[a]ny sexual penetration, however slight, is sufficient to complete the crime [or rape]."

(2) *Denial of continuance motion.*

Cooks contends the trial court erred by denying his request to continue his sentencing hearing. The following colloquy occurred at sentencing:

"The court: Mr. Cooks, you have had in excess of a year. I have granted you one continuance after the next, and I will be pronouncing sentence today.

"The defendant: Sir, and I haven't had time to complete my sentencing [*sic*].

"The court: I am mindful of your representations. The court does not find that there is any legal justification to delay sentencing further. The court will now pronounce sentence."

As acknowledged by appellate counsel's supplemental letter brief (filed July 21, 2015) Cooks was convicted on May 10, 2013, and sentencing was originally set for two weeks later, on May 28. Thereafter, however, sentencing was continued 11 times (the last time over the People's objection) and then Cooks again requested a continuance on May 23, 2014.

"A continuance will be granted for good cause ([Evid. Code] § 1050, subd. (e)), and the trial court has broad discretion to grant or deny the request. [Citations.] In determining whether a denial was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and to the reasons presented for the request. [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 1012-1013, disapproved on another

23

ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) "A showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence." (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) On appeal, the defendant must demonstrate a clear abuse of discretion in order to challenge the trial court's denial of a motion for continuance. (*People v. Froehlig* (1991) 1 Cal.App.4th 260, 265 ["Discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered."].)

After a dozen continuances, the trial court refused to delay the matter any further. The trial court acted well within its discretion in denying yet another continuance after sentencing had already been continued for nearly a year.

(3) *Lack of probation report*.

Cooks complains that he never received a copy of a presentence probation report, and he apparently contends that the trial court erred by sentencing him without having obtained a presentence probation report.

In general, "a probation report is not necessarily required if defendant is statutorily ineligible for probation . . . . [Citations.] This is consistent with section 1203, subdivision (b)(1), which provides in pertinent part that the trial court shall order a probation report 'before judgment is pronounced' for persons 'convicted of a felony' who are 'eligible for probation.' " (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 180.) Cooks was not statutorily eligible for probation because he was subject to sentencing under the One Strike scheme. (See § 667.61, subd. (h) ["Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person who is subject to punishment under this section."].)

Nevertheless, even where a defendant is statutorily ineligible for probation, a trial court has discretion to order a presentence probation report under section 1203.10: "[U]nder section 1203.10, at the time of a verdict of guilty, the probation officer, 'when so directed by the court,' must 'inquire into the antecedents, character, history, family environment, and offense of such person, and must report the same to the court and file

24

his report in writing . . . .'  If the court has requested a probation report under section 1203.10, the court may not pronounce judgment upon the defendant 'unless a copy of the probation report has been made available to the court, the prosecuting attorney, and the defendant or his or her attorney, at least two days or, upon the request of the defendant, five days prior to the time fixed by the court for consideration of the report with respect to pronouncement of judgment.'  (§ 1203d.)  The report is then filed with the clerk at the time the court considers it."  (*People v. Conners* (2008) 168 Cal.App.4th 443, 456.)

In this case, the record on appeal contains a "probation and sentencing report," but this report has no date stamp.  It does, however, indicate a "hearing date" of March 27, 2014, which – according to Cooks's appellate counsel – was one of the dates from which sentencing had been continued.  Inasmuch as we are remanding this matter for resentencing, we will direct the trial court to furnish Cooks with any probation report to be used for resentencing.

## DISPOSITION

The convictions are affirmed.  The sentence is vacated and the matter is remanded to the trial court for resentencing in accordance with the terms of this opinion.  The petitions for habeas corpus are denied.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



ALDRICH, J.




JONES, J.[*]

---

[*]	Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.